**KAY, Plaintiff-Appellee, v. PENNSYLVANIA RAILROAD CO. et,
Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21822.   Decided February 13, 1951.

Harrison, Thomas, Spangenburg & Hull, Cleveland, for plain-
tiff-appellee.

Squire, Sanders & Dempsey, McConnell, Blackmore, Cory & Burke, Cleveland, for defendants-appellants.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment of the common pleas court of Cuyahoga County, against both defendants and in favor of the plaintiff, the action being one in negligence.

The plaintiff was an employee of the defendant, The Pennsylvania Railroad Company. He was a brakeman. At the time of the accident, he was engaged with a crew of five others, in shifting a box car from the Root Lumber Company in the City of Piqua, Ohio. The industrial track that serves the Root Lumber Company turns into the property of the defendant, The Orr Felt & Blanket Company from Wayne Street, proceeds westerly through the Orr Felt & Blanket Company property between two of its buildings and then turns south along Main Street to the Lumber Company. There were gates erected over this industrial track at each of the entrances into the Felt & Blanket Company property which were kept locked and the only way a switch engine could enter was by unlocking the gates either with a key carried by the conductor, or getting a key from an employee of The Orr Felt & Blanket Company. In 1939 The Orr Felt & Blanket Company built a draw bridge over this track, the hinge side of which was on the north building and operated from that side. The draw-bridge when lowered was about 13.5 feet above the rail of the industrial track so that when the track was in use it was necessary to raise it to provide sufficient clearance for the switch engine and box cars to pass. When fully raised, the clearance over the north rail was 17.51 feet and over the south rail 20.82 feet.

When the defendant, The Pennsylvania Railroad Company, used this industrial track, an employee of the Orr Felt &

Blanket Company after notification by the ringing of a bell provided for that purpose, would cause the draw-bridge to be raised.

On the 29th day of May, 1947, the defendant, The Pennsylvania Railroad Company desired to remove a box car that had been spotted at the Root Lumber Company. The plaintiff was one of the crew in charge of the switch engine assigned for that task. The plaintiff had worked on this industrial track at least six times prior to May 29, 1947. He, therefore, knew about the bridge of the Felt Company over the switch track and that there was limited or low clearance when the bridge was in a raised position.

When the switch engine reached the box car, it was coupled on to the head end of the engine by some member of the crew other than the plaintiff. As the train started to back over Main Street and to turn into the Felt Company's property, the plaintiff without direction from the conductor, took a position in Main Street to flag traffic. As the box car was passing, the plaintiff testified that it sounded like the brakes had not been released. The duty to check the brakes of a car when coupled on to a train or engine to be moved, was said to rest with the member of the crew who made the coupling. However, and again without instructions, the plaintiff boarded the box car as it passed into the Felt Company's property, climbed up the ladder on the north front end and seated himself on the roof with his feet hanging over the side. The height of the box car was fourteen feet five inches at the eaves which would be about two feet outside the rail and fifteen feet one inch in the center. The clearances between the top of the car and the bridge when raised, was approximately six feet five inches over the south rail, four feet over the middle, three feet one inch over the north rail and one foot eight inches at the point where the plaintiff placed himself after climbing the ladder. At this time the train had moved forward so that the box car was from fifteen to twenty feet from the draw bridge (or as stated by plaintiff in his brief, the box car was passing under the shed connecting the two buildings) and proceeding at a speed of about ten miles per hour.

Instead of gauging the clearance to determine whether it was safe for him to ride under the bridge, in the position in which he was seated, the plaintiff testified that he looked over the side of the box car to see if there was sufficient clearance for the car to pass some gas tanks that were standing near the tracks at a point just beyond the bridge. As he straightened up, his head came in contact with the side

of the draw-bridge whereby he was rendered unconscious for a few minutes, falling to his back on the top of the car. He was taken to the hospital from Piqua Station for observation and was released the next afternoon after a stay of about seventeen hours.

The plaintiff in testifying as to what he did, said:

"Q. Did you know whether or not a man could ride through underneath that draw bridge while riding on top of the car?

"A. I knew—I thought it ought to clear you sitting down. I knew the bridge was low, I knew the bridge was there.

"Q. You knew the bridge was there. You knew it was low?

"A. Yes, I did."

And on cross-examination the plaintiff testified:

"Q. So that you never had any previous experience of riding under there and knowing that you would clear sitting down?

"A. I just took it for granted it would clear sitting down. I didn't think they would build a bridge that low."

After release from the hospital, the plaintiff returned to his home where he made frequent requests to return to work but was not permitted to do so until about October 12th. Thereafter he worked for fifteen months except for time off of three or four weeks because of a sprained ankle. The plaintiff testified that during this period he suffered frequent headaches, dizzy spells, and nausea and that his sleep was restless and disturbed. He suffered a heart deraignment known as Auricular Fibrillation just before Christmas, 1948. The plaintiff has not worked since that date.

The first claim of error of The Orr Felt & Blanket Company is that the plaintiff was guilty of negligence as a matter of law and a plea of distraction cannot excuse such negligence because plaintiff voluntarily put himself in a place of immediate known danger. As has been indicated, the plaintiff was by the undisputed evidence about fifteen to twenty feet from the draw-bridge when he reached the top of the box car. At the rate of speed the train was moving it would cover the remaining distance within, at the most, one and one-half seconds. A vehicle moving ten miles per hour proceeds at about fifteen feet per second. The tanks which plaintiff claims were so close to the track to endanger the train, were at the north side of the track at about the point of the bridge. The engine had passed them without danger a few minutes before in passing through the Felt Company's property to get the box car near the lumber company on Main Street. Two other members of the crew, the engineer who was looking out of the cab window of the engine on the north side of the cab, and a brakeman riding the footboard

on the same side of the train, were checking clearances so that there was no need for the plaintiff to concern himself about the tanks, and even if he did, at the time he reached the top of the box car the car was so close to them as to render any signal he might give, useless. In any event he placed himself in a place of immediate known danger. Such conduct has been held under similar circumstances to be evidence of the fact that the injured party assumed the risk of such known danger.

**Pennsylvania Railroad Co. v. Snyder, 55 Oh St 342.**

**Masters v. New York, Chicago R. R. Co, 147 Oh St 293.**

The fourth paragraph of the syllabus of the last cited case holds:

"4. A person, who brings about a condition or situation obviously dangerous to himself by voluntarily exposing himself to a hazard created by another, assumes the risk of injury so created, and thereby relieves such other of legal responsibility for an injury resulting from such exposures."

The plaintiff, by his own testimony, placed himself on the box car, not to check clearances, but to examine the brakes. There was nothing about such duty that could relieve the plaintiff of the duty to exercise reasonable care to avoid a known immediate danger, which by his own testimony he failed to do. But the question of fact as to whether or not his conduct, under the circumstances, was negligent and whether such negligence if shown, was a proximate cause of the injuries which he sustained, is still a jury question. it might be argued that a verdict for the plaintiff under these circumstances would be manifestly against the weight of the evidence requiring a reversal on that ground, but that would not justify taking the case from the consideration of the jury. The defendant, Felt Company's first assignment of error is therefore overruled.

The Orr Felt & Blanket Company's second claim of error is the failure to read to the jury requests to charge before argument Nos. 1 and 3.

The record discloses that the Felt & Blanket Company presented three requests in writing for instructions upon the law before argument. These requests were presented to the court in chambers where numbers one and three were approved and number two was refused. The record shows that the trial had proceeded for eight days and at 4:00 P. M. of the eighth day which was Friday, both parties rested their case. The court's bailiff then informed the court that some of the jurors had expressed the hope that the case could be concluded that night. A poll of the jury was conducted twice

and on the second poll nine of the jurors indicated that such was their desire. The trial then proceeded through the evening until the jury, after deliberating less than one hour, returned a verdict for $50,000.00 the full amount prayed for, at about 10 P. M.

The record as originally transcribed by the official court reporter, did not record that the court gave the instructions requested in writing before argument by the Felt Company. The defendant, The Orr Felt & Blanket Company, presented such claim of error on motion for new trial and supported such claim by affidavits. The official court report's record showed that the papers received from the jury, when the verdict was returned, did not include said instructions. Defendant's counsel by affidavit testified that they were found by him after trial, among papers he picked up after the case was submitted to the jury.

The court, in overruling the motion for new trial, clearly indicated that he had no positive recollection as to whether or not the special instructions were given. The court said in part:

"* * * The court, relying on his recollection alone, would say that he did read the two charges to the jury before argument. He always does and we see no reason why, in the thousands of cases tried, he should make a different rule or take a different attitude in this case; and the court believes, and relying upon its recollection alone, would say that he did read the two charges to the jury before argument and later read the two interrogatories also.

"The court's recollection in this respect is also fortified by the deducting thought that if the court had in fact failed to read them then surely astute counsel would have noted the failure * * *."

Also at pages 1019, 1020 and 1020-a of the Bill of Exceptions where, after the bill of exceptions had been filed as written from the notes of the official court reporter, which did not mention the said charges or record that such charges were given to the jury in his presence, the court thereafter inserted substitute pages showing the special instructions as having been read and explains such change by saying.

"Court has substituted its own version of what transpired by taking out pages 1019 and 1020 of the record and by substituting the following three pages each of which is herewith o.k'd. It is done to correct the record as the court understands it."

The record thus discloses a marked uncertainty as to whether or not the defendant was afforded his absolute legal right

to have the two requests to charge, which were approved by the court, read to the jury before argument. The haste with which the case was concluded undoubtedly added to the confusion and uncertainty. A case of such magnitude, or any case for that matter, should not be subject to any uncertainty whatever as to the procedural steps provided for by law as well as to the preservation of a party's substantive legal rights.

In the case of **Booksbaum v. Christian, 53 Oh Ap 384,** the court held:

"1. It is prejudicial error for a trial court through inadvertence to fail to give, before argument, a submitted request to charge which contains a correct statement of the law applicable to the case at bar, until after the general charge to the jury. The giving of the substance of the request in the general charge does not cure the error.

"2. In such case the duty imposed upon the trial court is mandatory, and counsel requesting the charge need not inquire whether the court has overlooked the request, but may assume, on the court's failure to give the instruction, that it refused so to do."

From the record it is far more probable than not that the written instructions requested by the Felt Company before argument did not go with the exhibits, pleadings and other papers with the jury when they retired to deliberate at the conclusion of the court's general charge. **Sec. 11420-1 GC. Paragraph 5** and **Paragraph 7,** provide as follows:

"**Sec. 11420-1 GC:** When the jury is sworn, unless for special reasons the court otherwise directs, the trial shall proceed in the following order except as provided in the next following section. * * *

"5. When the evidence is concluded, either party may present written instructions to the court on matters of law and request them to be given to the jury, which instructions shall be given or refused by the court before the argument to the jury is commenced. * * *

"7. The court, after the argument is concluded, before proceeding with other business, shall charge the jury; any charge shall be reduced to writing by the court if either party, before the argument to the jury is commenced, request it; a charge or instruction when so written and given (,) shall not be orally qualified, modified or in any manner explained to the jury by the court; and all written charges and instructions shall be taken by the jurors in their retirement and returned with their verdict into court, and shall remain on file with the papers of the case."

The syllabus of the case of **Cone and O'Dell v. Bright, 68 Oh St 543**, provides:

"On the trial of a cause to a jury, if a party thereto presents written instructions to the court on matters of law and requests the same to be given to the jury before argument is commenced, as provided for in sub-division 5 of Sec. 5190, Revised Statutes, which is done and such party, at the close of the general charge asks the court to permit the jury to take the written instructions so given, in their retirement or send the same to the jury during its deliberations, as provided for in sub-division 7 of said section, a refusal by the court to grant the request is error, for which a judgment against the party making the request will be reversed."

And at page 553 of the opinion, the court says:

"And the fact that the general charge is not in writing does not relieve the court of the duty imposed by statute as to written instructions which have been presented and given before argument. It must be noted that the statute provides that * * * 'such instructions shall be taken by the jurors in their retirement.'"

From the foregoing circumstances, considerable doubt is evidenced as to whether The Orr Felt & Blanket Company was afforded the protection of the procedural rules provided by law. But on the trial of this appeal we have before us a bill of exceptions certified by the court to exemplify what took place at the trial. By such certification we are bound. It is not within our jurisdiction to settle the bill of exceptions in this proceeding. We must, therefore overrule the Felt Company's second assignment of error.

The third claim of error is based on the refusal of the court to give request No. 2 to charge before argument. The request was as follows:

"I charge you that if you find that the plaintiff knew of the location and existence of the drawbridge, and knew that the clearance between the drawbridge and the box car was close, and that despite this knowledge the plaintiff placed himself in a position of potential danger, then you shall find the plaintiff guilty of contributory negligence and your verdict must be for the defendant, The Orr Felt & Blanket Company."

This request is a modification of this defendant's claim of error for not granting its motion for judgment, on the ground that plaintiff's evidence disclosed that he was guilty of negligence as a matter of law in placing himself in a place of immediate known danger without using ordinary care

to avoid injury therefrom, which conduct on his part was the proximate cause of his injury.

In the claim of error now being considered the question of whether the plaintiff knowingly placed himself in a place of danger is made a jury question, but the need to show that such negligence, if shown, was a proximate cause of the plaintiff's injuries, is not mentioned as a necessary element in entering judgment for the defendant.

In the case of **Coal Co. v. Estievenard, 53 Oh St 43,** the plaintiff filed a claim for personal injury because of the negligence of his employer in failing to furnish a supply of timber as provided by Revised Statute, Sec. 6871, to enable him to prop the roof of the mine in which he was working. The plaintiff had gotten some timber from a workman in a room next to him, which he used to prop the roof. After propping the roof he made tests and found there was a loose stone in the roof. He testified, however, that after putting in the posts he thought the room was safe enough. Props were thereafter delivered to him which he did not use, saying that after he had set the props he thought he was in security, or safe and that he had no need of other props. The court held:

"4. One who enters or remains in a room of a coal mine, knowing the roof thereof to be unsafe, or having the means at hand of knowing the unsafety of such roof, is guilty of such negligence as will prevent a recovery for any injury he may sustain by the falling of such roof.

"5. If one party has been negligent and the other party has knowledge thereof, or is chargeable with such knowledge, he must thereafter act with reference to such negligence and cannot shut his eyes and claim that he relied upon a proper performance of duty by the other party."

The first part of the second charge as requested is supported by the foregoing authority but when such charge is taken in its entirety, it does not state a correct proposition of law. It was not error therefore to refuse to give special request number two to charge before argument and the Felt Company's third assignment of error is overruled.

The fourth claim of error of the defendant, Orr Felt & Blanket Company, has to do with the court's general charge on the subject of distraction and further that the charge incorrectly commented on the facts.

The charge of the court complained of upon this assignment of error was as follows:

"In the event your finding is for the plaintiff, you will next consider the question of contributory negligence. If you

find that the plaintiff failed to exercise ordinary care to preserve and protect his own safety, then you will find him guilty of contributory negligence. Every person is under a duty to exercise his senses, including his sense of sight, to the extent an ordinarily prudent person would exercise his senses under the same or similar circumstances in order to preserve his safety. All the surrounding circumstances must be considered. Ordinarily, a person who proceeds into a known danger without maintaining a lookout, and is injured under conditions where there would have been no injury had a lookout been kept, is deemed guilty of contributory negligence. However, there is an exception to this rule. If there is a known or obvious danger, which could be seen and guarded against, but the attention of the person is momentarily distracted by another danger, and the person is injured while his attention is distracted, then his failure to guard against the first danger may be excused.

"Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, or where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger.

"The test remains the test of ordinary care under all the circumstances. In this case, the plaintiff claims that he did not know that the bridge was low enough to strike him while he was in a sitting position on the box car. He admits that he could have seen the bridge if he had looked, and could have avoided it if he had seen it in time.

"He further claims that his attention was momentarily distracted by certain metal tanks close to the tracks and near the draw-bridge. It is up to you to determine the facts as to plaintiff's conduct and the surrounding circumstances, under the rules of law I have given you.

"If you find that plaintiff's attention was in fact distracted from the drawbridge and further find that a person of ordinary prudence, with the duties of a brakeman similar to the plaintiff's, acting under the same or similar circumstances, would have had his attention distracted so as to momentarily forget or fail to see the drawbridge, then you will find the plaintiff not guilty of contributory negligence. But if you find that plaintiff's attention was not distracted or find that he failed to exercise ordinary care despite the distraction, then you will find that plaintiff was guilty of contributory negligence."

28

The charge proceeds upon the theory that the circumstances under which the plaintiff places himself in a place of danger is of no significance. His failure to guard against an immediate danger in which he knowingly places himself is said, because of distraction, to relieve him of what otherwise would admittedly constitute negligence proximately contributing to the cause of his injury. The cases relied upon by the plaintiff do not support such a rule. For example, the case of **Kane v. Northern Central Ry. Co., 128 Oh St 91; 32 O. Ed. 339**, involved circumstances where a brakeman had observed a broken or missing step on a freight car on the train upon which he was working. He had reported the defective condition of the car to the conductor. At a later time while making his way from the caboose to his station on the train, the train having started while he was eating his breakfast, in his hurry to get to his post he forgot the location of the car with the defective step and was injured because of such defect. Under the facts the court held that the question of contributory negligence was one for the jury. The facts of this case are clearly distinguishable from those here being considered where the plaintiff knowingly placed himself in a place of immediate danger before the facts upon which distraction was claimed diverted his attention. It is not the law that one is excused from negligently putting himself in a place of immediate known danger because of claimed distractions. The charge makes no distinction between a danger which comes about without the plaintiff's fault and which he fails to observe because of claimed distraction, and a circumstance where a party knowingly puts himself in a place of immediate danger.

It will be noted also in the part of the charge above quoted that the court in commenting on the plaintiff's evidence said:

"The plaintiff claims that he did not know that the bridge was low enough to strike him while he was in a sitting position on the box car."

The plaintiff testified that he knew the bridge was low and at one point said:

"* * * just took it for granted it would clear sitting down. I didn't think they would build a bridge that low."

This part of the charge in mis-stating plaintiff's evidence was prejudicial.

The Felt Company's fourth claim of error is therefore sustained.

The defendant, Orr Felt & Blanket Company's fifth assignment of error is based upon the court's charge that the violation of §8903 and §8976-1 GC, constituted negligence as a matter of law.

**Sec. 8903 GC**, provides:

"Except cases in which the state railroad commission finds that such construction is impracticable, bridges, viaducts, overhead roadways, foot bridges, wire or other structures hereafter built over the track or tracks of a railroad * * * by a corporation * * * shall be not less than twenty-one feet in the clear from the top of the rails of such track * * *."

**Sec. 8976-1 GC**, provides in part:

"* * * except in cases in which the public utilities commission of Ohio finds that such placements or construction is impracticable, material of all kinds and all permanent structures such as * * * bridges * * * placed adjacent or contiguous to a track of a railroad by a * * * corporation or person, shall not be less than eight feet in the clear from the center of the track measured horizontally therefrom and such lateral clearances shall be uniformly maintained vertically upward a distance of twenty-one feet from the top of the rail. * * * The public utilities commission is hereby given full power and authority to prescribe rules and regulations governing all such placements and construction."

**Sec. 8976-1 GC** was considered by the Supreme Court of Ohio in the case of **Cooperative Legislative Committee etc. v. Public Utilties Commission of Ohio, 150 Oh St 270.** It was the claim of the committee that the close clearances of the tracks of the New York Central Railroad Company's Hayes Avenue Yard in Sandusky, Ohio, violated the provisions of §8976-1 GC. The clearance between said tracks was less than thirteen feet center to center. The court said at page 275, after quoting in full §8976-1 GC:

"It is conceded by all parties to this case that there is no specific requirement law of the state which the railroad is violating by the manner in which it maintains its tracks at the yard * * *."

The Public Utilities Commission of Ohio by the terms of §8976-1 GC is given power to determine whether or not it is impractical to comply with the vertical and lateral clearances specified by the section in a particular case, before there can be a violation. **Sec. 8903 GC** is very similar except that the railroad commission is given authority to determine what is practical in a particular case. It cannot be said, therefore, that the draw-bridge constructed so that the vertical or lateral clearances were less than specified would constitute negligence as a matter of law. These statutes prescribed a standard of conduct but do not lay down an absolute rule or duty. The court's charge which in effect stated that this defendant was guilty of negligence as a matter of law in con-

structing the draw-bridge with vertical and lateral clearances less than twenty-one and eight feet respectively, was therefore prejudicially erroneous.

The defendant's sixth assignment of error is directed to the court's charge on lateral clearances. The court in part said:

"* * * did not provide a clearance of eight feet laterally measured horizontally from the center of the track, with lateral clearance maintained for a distance of twenty-one feet, measured upward from the top of the rail; then I charge you that the defendant, The Orr Felt & Blanket Company was guilty of negligence as a matter of law and you will so find."

This charge is subject to the same objection as was found with regard to that part of the charge considered under this defendant's fifth assignment of error and was therefore prejudicially erroneous.

The seventh assignment of error of the Orr Felt & Blanket Company is concerned with the court's charge on the subject of this defendant's failure to exercise ordinary care with regard to warning signs, overhead clearances and certain tanks near the switch track. The amended petition of the plaintiff contains four allegations of negligence, all of which are directed to the overhead drawbridge with which plaintiff came in contact, causing his injury. It is not alleged nor is there any evidence that the presence of the tanks on the north side of the switch track in any way contributed to or was a proximate cause of the plaintiff's injury.

The court, in explaining the plaintiff's charges of negligence to the jury, said that they really presented only two questions:

"* * * first, a charge of negligence in the construction and maintenance of the drawbridge; and second, a charge of negligence with respect to the whole area surrounding the scene of the accident, including the presence or absence of warning signs, low overhead clearances, and certain tanks near the tracks." * * *and .* * * "placed and maintained metal tanks similar to acetylene tanks close to the railroad track and that such tanks constituted an unreasonable hazard to the plaintiff, and further find that a person of ordinary prudence acting under the same or similar circumstances would not have done so, then you will find the defendant, The Orr Felt & Blanket Company guilty of negligence."

The plaintiff's reply to the defendant's charge or error, because it is claimed that side clearances were not in the case, is to the effect that the plaintiff was a frequenter upon defendant's premises, and as such the defendant was bound

to exercise ordinary care to maintain its premises in a reasonably safe condition, for the safety of the plaintiff while lawfully on the premises and that the close proximity of the tanks to the switch track constituted a hazard or danger which reasonable care on the part of The Orr Felt & Blanket Company would have avoided. There can be no doubt but that the Felt Company owed the duty of due care for the safety of the plaintiff, when acting in the exercise of his duties as a switchman on a train moving over the switch track while passing through the Felt Company's property. However, unless the claimed danger of the tanks being close to the switch track was a contributing factor in causing plaintiff's injury, and such claim is properly pleaded and supported by evidence, it would constitute error to charge the jury as was done in that part of the charge above quoted.

The claim of the plaintiff is that the presence of the tanks was the factor that distracted the plaintiff's attention from the danger of the bridge which he could have observed had he looked in the direction in which the train was moving as required by the rules. We therefore sustain the Felt Company's seventh assignment of error.

The eighth assignment of error concerns the court's charge on the subject of warning signs. The charge complained of is as follows:

"If you find that this defendant failed to exercise ordinary care with respect to the presence or absence of warning devices reasonably adequate to give the plaintiff effective warning of the location and height of the drawbridge, you will find the defendant, Orr Felt & Blanket Company guilty of negligence."

This is certainly a correct statement of law in a proper case. The only question is as to its applicability to the facts claimed by the plaintiff in the case.

The plaintiff testified that he knew of the low clearance of the bridge. He also knew that it was close at hand when he seated himself on the top of the box car. Likewise, there is no showing that if tell-tales or other warning devices had been installed at a proper place that they would have been of any value to plaintiff because he did not reach the top of the box car until he was at the edge of the overhead shed or about fifteen to twenty feet from the bridge. Under the facts as presented by the plaintiff, warnings, or warning devices would not have been of help to him. The charge was therefore erroneous.

The ninth claim of error is that the verdict is excessive.

The plaintiff's prayer asks for $50,000.00 damages. The

jury, with less than an hour's deliberation beginning about 9:00 P. M., returned a verdict for the full amount asked for. The evidence as to the extent of plaintiff's injuries, when considered in its most favorable light, could not sustain such a verdict. The trial court, upon ruling on the motion for new trial, said:

"I was concerned and bothered and stirred by two questions; one was the size of the verdict."

He thereupon granted a remittitur of $10,000.00.

We are of the opinion that the verdict is not sustained by the evidence and is excessive to such an extent that it cannot be corrected by a remittitur. The court should, therefore, have granted a new trial because the verdict is grossly excessive.

The tenth claim of error is founded upon the trial court's failure to grant a new trial on the ground of newly discovered evidence. We find that such claim is not well taken and the Felt Company's tenth claim of error is therefore overruled. As to the Felt Company, the cause for the reasons herein set forth is reversed and remanded for further proceedings.

Coming now to the errors claimed by The Pennsylvania Railroad Company. It is the claim of the Railroad Company;

"1. That the court erred and invaded the province of the jury when in its general charge it undertook to lay down rules of conduct by which specific acts enumerated by the court would, in and of themselves, constitute negligence.

"2. The court erred in its general charge with respect to the warnings which it asserted the Pennsylvania Railroad should have given Kay, in that the effect of such charge was to make the Pennsylvania an insurer of Kay's safety."

The charge as to the Railroad Company's negligence was as follows:

"The plaintiff says that the defendant, Pennsylvania Railroad Company was negligent in two respects, or specifications.

"The first specification is: 'In failing to provide for the plaintiff a reasonably safe place to work.' It is conceded that as to this defendant the controlling law is the Federal Employers' Liability Act. The federal statute provides that a railroad, such as the defendant, is liable in damages to an employee such as the plaintiff if the employee suffers injury resulting in whole or in part from the negligence of any of the officers, agents, or other employees of the railroad; or for injury suffered by reason of any defect or insufficiency due to its negligence; in the track, road-bed, works or equipment of their railroad. Under the Federal Employers' Li-

ability Act a railroad company in the exercise of ordinary care has the duty not to require or permit its employees to conduct switching operations on a track which is obstructed by low overhead clearance to such an extent that the lives or safety of its brakemen upon its cars are imperiled or put in danger.

"And even though an overhead obstruction is built or maintained by another, the railroad company will still have the duty not to direct or permit its employees to conduct train operations under the obstruction if the obstruction constitutes a hazard or danger to its brakemen and if the railroad knows of the hazardous condition or in the exercise of ordinary care ought to know, of the condition. In determining whether a railroad company, through its employees and agents knows or ought to know of a dangerous obstruction, you may consider the length of time the obstruction has been in existence prior to an accident.

"However, even though a railroad company might otherwise be considered negligent in sending an employee under a low overhead obstruction, such negligence could be overcome by proper safeguards, used by the railroad company and proper warnings to the employee.

"Proper safeguards or warnings would be such signs, telltales, instructions or devices as you find would be reasonably adequate to prevent accident and injury and which ought, in the exercise of ordinary care, to be provided.

"Plaintiff's second specification of negligence charges the Pennsylvania Railroad Company with negligent failure to warn the plaintiff of danger incidental to train operation by reason of the overhanging drawbridge.

"It is my opinion, and I so charge you, that the two charges or specifications of negligence, against the Pennsylvania Railroad Company must be considered together.

"You will find that the Pennsylvania Railroad Company was guilty of negligence if you find that the drawbridge over its tracks constituted an unreasonable hazard or danger to employees such as the plaintiff; and further find that before the accident the Company, through its employees, knew, or in the exercise of ordinary care ought to have known of the existence, location and hazard or danger of the bridge; and further, find that the Company directed or permitted its train crews to conduct train operations under said bridge; and further find that the Company failed to exercise ordinary care to provide warnings, warning devices or safeguards reasonably adequate to prevent accident and injury.

"On the contrary, if you do not find each of the above listed elements of negligence to be established by the pre-

ponderance of the evidence, then you will find that the Pennsylvania Railroad Company was not negligent and will return a verdict in favor of the Railroad against the plaintiff."

The liability of a railroad, because of injuries suffered by its employees in the exercise of their duties, is governed by The Federal Employers Liability Act (Title 45 U. S. C. Sec. 50). The basis of the liability of a common carrier to his employees, under the Act, is the failure to exercise ordinary care under the circumstances of a particular case, to furnish a reasonably safe place in which to work. Liability is founded on common law negligence and in interpreting the Act state courts are bound to follow the rulings of the Federal Courts.

The instructions of the court above quoted as to the duty of the railroad company to furnish a reasonably safe place in which to work and as to the warnings of danger to which the plaintiff was entitled, go beyond the standard of the exercise of ordinary care.

The jury was told that the railroad company owed the duty not to direct switching operations "on a track which is obstructed by a low overhead clearance to such an extent that the lives or safety of its brakemen upon its cars are impaired or put in danger." It was likewise told that if an obstruction constituted a hazard to its employees to its knowledge the railroad company owed the "duty not to direct or permit its employees to conduct train operations under the obstructions." In effect these instructions, under the uncontroverted facts of the case, was a direction to the jury that the railroad company was guilty of negligence as a matter of law. The charge as above quoted is subject to the same objections as the plaintiff presented against the defendant, Orr Felt & Blanket Company's claim of error No. 1, heretofore considered.

The Federal cases cited by all the parties in their briefs do not depart from the general rule that the question of whether negligence is established under the circumstances of a particular case is a jury question.

In the case of Ellis v. Union Pacific Railroad Company, 329 U. S. 649, the plaintiff was crushed between the wall of a building and the side of a railroad car, in a train of which the plaintiff was a member of the crew. There was a big warning sign at the point of the close lateral clearance. The plaintiff testified that he did not see the sign or know of the close clearance and that he placed himself at the point of injury to enable him to signal the engineer. Certainly the physical circumstances of the close lateral clearance on one side of the track to the building in this case was no more

dangerous than the close clearance on the north end of the drawbridge. The court held that the question of whether the plaintiff was afforded a safe place to work was a jury question.

In the case of Krause v. Reading, 167 Fed. (2d) 313, the engineer was killed because his head struck the side of a tunnel which had a thirteen inch static clearance and a six inch motion clearance. It was claimed in this case that the defendant was guilty of negligence as a matter of law.

The Court of Appeals overruled the plaintiff's contention and said:

"Here we have an experienced engineer who made this trip with this type of engine on numerous occasions * * *. We think, moreover, there is nothing in a thirteen inch static and six inch motion clearance in this tunnel which permits us to declare as a matter of law that the place was an unsafe place to work."

The case of West v. Chicago B & O Railroad Co., 179 Fed. 801 where the plaintiff, a brakeman, was killed, his head coming in contact with a girder of an overhead bridge while he was riding on top of an extraordinary high furniture box car. The court said:

"Evidence is in the record tending to prove that the bottom of the girder was 19 feet, 8-½ inches above the rails; that ordinary box cars are 12 feet high; that the furniture car in question was 14 feet 1 inch; that West was 6 feet tall in his shoes; that the company maintained this bridge as an overhead highway crossing; and that the company had a standard or usual clearance of 22 feet between track and overhead permanent structures. This was sufficient to make a prima facie case under the first charge of wrongful conduct. The ways of these great roads of commence are maintained for the indefinite future. To erect permanent structures in such locations and relations that employees when discharging their duties are likely to be killed indicates an almost wanton disregard of human life. Under its denial the company did not conclusively overcome the prima facie showing.. Such a death trap is not to be excused except by a necessity that cannot reasonably be avoided."

The court further stated at page 805:

"But, concerning permanent obstructions, (the maintenance of which, unless reasonably unavoidable, is negligence per se) we think a further principle is involved, namely, that in law an employee is not bound at his peril to keep his consciousness continually charged with memories of the locations and relations of such obstacles, and that his engrossment in his

duties at the time may excuse his failure to recall the impending peril."

The plaintiff herein, cites this case as holding that the maintenance of the bridge, with a low clearance (where its standard bridges had a clearance of 22 feet) was negligence as a matter of law. But it must be noted that the court says that, "such death trap is not to be excused **except by a necessity that cannot reasonably be avoided.**" (Emphasis ours.)

And again in the last paragraph quoted, the court says that "an obstruction **unless reasonably unavoidable,** is negligence per se." (Emphasis ours.)

The court did not hold that the question was one of law for the court on the undisputed facts but rather that the facts made out a "prima facie showing" to be considered by the jury.

The plaintiff's contention that he was entitled to an instruction that the low clearance of the drawbridge constituted negligence as a matter of law on the part of the railroad company in conducting switching operations thereunder is bottomed primarily on the case of Chotaw Okla. & Gulf R. R. Co. v. McDade, 191 U. S. 64. This case was decided five years before the Federal Employers' Liability Act became the law of the United States.

In the McDade case, the deceased was riding on top of a boxcar on the main line of the railroad company in the open country at night when because of a low water spout maintained over the track he was knocked off and killed. The court in effect held that maintaining a water spout in such a low position as to constitute a danger or hazard to employees, constituted negligence as a matter of law in the employer's failure to provide a safe place to work.

Since that decision, except for one or two lower court cases it has never been cited for the purpose of showing that low or close clearances, either vertical or lateral, constituted negligence as a matter of law.

The following cases hold, contrary to the McDade case, supra, that the question of whether or not either lower or narrow clearances or defective equipment constitute negligence in failing to provide a reasonably safe place to work is a jury question to be determined by giving consideration to all the circumstances of a particular case:

Seaboard Airlines v. Horton, 233 U. S. 492. Explosion of a water gauge.

Southern Pacific v. Berkshire, 254 U. S. 415. Engineer put his head out window of engine cab striking a mail crane which cleared the passing engine by fourteen inches.

Atlantic Coast Line R. R. v. Powe, 283 U. S. 401 where it was held that a signal semaphore which had a clearance of four feet between a passing train was not close enough to raise a jury question of negligence.

Wilkinson v. McCarthy, 336 U. S. 53.

In Kanawha v. Michigan Railroad Co. ; Kerse, Admr. 239 U. S. 576, the deceased was struck by a beam or timber two inches thick by three to six inches wide which had been placed over the private switch track between two buildings of the Kanawha Brewing Company by employees of the brewing company. The deceased was working as a brakeman and was riding on top of a box car in a switching operation then being conducted upon said private switch track in the brewing company's property. The plaintiff, in citing this case, asserts that the court held that such obstruction constituted negligence as a matter of law and it was so published in 60 Law Ed. 575 in the first paragraph of the headnotes. But in the official report in the third paragraph of the syllabus, the court held:

"To conduct switching operations upon a switch obstructed in such a manner as to endanger the lives of brakemen upon its cars, **is evidence of negligence,** on the part of the railroad company, and the existence of such an obstruction for a considerable period of time is presumptive evidence of notice to the company." (Emphasis ours.)

The plaintiff further quoted from the opinion (page 879) as follows:

"The action of the railroad company, through its employees, in conducting its switching operations upon a switch obstructed as this one was, in such manner as to endanger the lives of brakemen upon its cars, speaks so clearly of negligence that no time be spent upon it."

It is claimed by this statement (upon the admitted facts) that the court intended to say that negligence was shown as a matter of law. This statement in the opinion, however, was made to dispose of the defendant's contention that it was entitled to a directed verdict at the conclusion of plaintiff's case.

In considering the claims of error of the railroad company in the light of the foregoing authorities, it must also be kept in mind that the facts are quite different than those of the McDade case, supra, and the one or two lower court decisions which seem to follow the rule of negligence as a matter of law, pronounced in the McDade case. In the instant case, that part of the switch track upon which the accident happened was between locked gates on either side of the Orr Felt

& Blanket Company's property, entrance to which could only be obtained by unlocking the gates. A switch engine could not move through the property at all until the drawbridge was raised which could only be accomplished by some member of the crew ringing a bell notifying the Felt Company employees that they wished to use the track. Under the circumstances the speed of any switching operation must, of necessity, be very slow. Under these circumstances it is hard to understand how any member of a crew who had been on this switch track could be unmindful of the clearances. The jury under these circumstances might well find that there was a safe place to work furnished and that because of the plaintiff's knowledge of the surrounding circumstances no warning was necessary or because of the short distance from the point where the plaintiff got on top of the box car to the point of danger warning signs or devices would have been valueless.

The defendant railroad company's assignments of error are therefore well taken.

The railroad company has not claimed error because of the amount of the verdict and judgment entered thereon. But since the co-defendant, The Orr Felt & Blanket Company, has raised this question and such assigned error has been sustained, it must result as a matter of course that the railroad company would be prejudiced because the amount of the judgment is not sustained by the evidence and therefore is excessive to such an extent as to prejudice the rights of both defendants.

For the foregoing reasons the judgment against The Pennsylvania Railroad Company is reversed and remanded for further proceedings. Exc. Order see journal.

McNAMEE, J, HURD, J, concur.